**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JUN SOO LEE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 16-0334-KD-B** |
| | ) | |
| **GUYOUNGTECH USA, INC., and** | ) | |
| **JIN HAN SON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This action is before the Court on the parties' Joint Motion for Approval of Settlement
Agreement and Dismissal with Prejudice and the Settlement Agreement (docs. 21, 21-2). Upon
consideration, and for the reasons set forth herein, the Motion is **DENIED with leave to re-file
on or before April 17, 2017.**

I. Background

Plaintiff Jun Soo Lee filed this action against Defendants Guyoungtech USA, Inc. and Jin
Han Son in the Circuit Court of Conecuh County, Alabama. Plaintiff alleged that Defendants, his
employers, violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.,* (FLSA) by failing to
pay federally mandated overtime wages from June 1, 2014 through March 12, 2016.  29 U.S.C. §
207.  Plaintiff alleges that he was a shipping assistant manager and worked 2,183 hours of
overtime for which he was not compensated at the required one and one-half times his hourly
rate ($27.69).  He seeks to recover his unpaid overtime compensation in the amount of
$90,678.46 together with liquidated damages[1] plus a reasonable attorney's fee and costs (doc. 1-

---

[1]  The FLSA provides for "the payment of wages lost and an additional equal amount as
(Continued)

1).  Defendants removed the action on basis that this Court has original jurisdiction over FLSA

action pursuant to 28 U.S.C. § 1331.

The parties negotiated a Settlement Agreement wherein Plaintiff has compromised his

claim.  Among other terms and conditions, the parties have agreed that Plaintiff will recover

$25,000.00 to be apportioned $15,000.00 to Plaintiff and $10,000.00 to his attorneys in return for

dismissal of this action and release of the Defendants (doc. 21-1).  The parties have now filed

their Joint Motion for Approval of Settlement Agreement and Dismissal with Prejudice and the

Settlement Agreement (docs. 21, 21-2).

II.  Analysis

Pursuant to the FLSA, the Court must determine whether the settlement is a "fair and

reasonable resolution of a bona fide dispute" of the claims raised and if so, approve the parties'

settlement agreement.  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354-55 (11th

Cir. 1982); *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009); *Stalnaker v. Novar Corp*.,

293 F. Supp. 2d 1260, 1263 (N.D. Ala. 2003).  In *Lynn's Food Stores*, the Court of Appeals for

the Eleventh Circuit recognized two methods for settlement of claims brought pursuant to the

FLSA: Supervision by the Secretary of Labor or by court approval in a private action where

plaintiff is represented by counsel. The Eleventh Circuit stated that the FLSA "contemplates that

'the wronged employee should receive his full wages plus the penalty without incurring any

expense for legal fees or costs.'" 679 F. 2d. at 351 (citation omitted).  In *Silva*, the Eleventh

Circuit noted that the FLSA "contemplates that 'the wronged employee should receive his full

wages plus the penalty without incurring any expense for legal fees or costs.'" 307 Fed. Appx. at

_____

liquidated damages." 29 U.S.C. § 216(b).

351.  "Therefore, in any case where a plaintiff agrees to accept less than his full FLSA wages and liquidated damages, he has compromised his claim within the meaning of Lynn's Food Stores."
*Vergara v. Delicias Bakery & Restaurant, Inc.*, 2012 WL 2191299, *1 (M.D. Fla. May 31, 2012).   If the plaintiff has compromised the FLSA claim, the plaintiff may do so only with Court approval of the settlement agreement. The rationale is that

> [s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's Food Stores*, 679 F.2d at 1354.  The Eleventh Circuit concluded that

> [o]ther than a section 216(c) payment supervised by the Department of Labor, there is only one context in which compromises of FLSA back wage or liquidated damage claims may be allowed: a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.

*Lynn's Food Stores*, 679 F.2d at 1355.

Therefore, before entry of a stipulated judgment approving a compromise and settlement, the Court must determine whether there is a "bona fide dispute over FLSA provisions" and then determine whether the proposed Settlement Agreement is a fair and reasonable resolution of that dispute.

A. Bona fide dispute over FLSA provisions

Section 216(b) of the FLSA provides that " ... [a]ny employer who violates the provisions

of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages..." 29 U.S.C. § 216(b).

"[T]he FLSA obligates employers to compensate employees for hours in excess of 40 per week at a rate of 1 ½ times the employees' regular wages." *Christopher v. SmithKline Beecham Corp.,* 132 S. Ct. 2156, 2162 (2012) (citation omitted).  Section 207 is captioned "Maximum Hours" and paragraph (a)(1) states as follows:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

Upon review of the complaint and answer (docs. 1-1, 2) and the parties' representations in the Joint Motion (doc. 21), the Court finds that there is a "bona fide dispute" over FLSA provisions.  Specifically, the parties dispute whether Plaintiff was an hourly non-exempt employee instead of a salaried employee exempt from overtime pay, whether unpaid overtime wages are owed to him, and whether he worked the overtime hours he claimed.  The parties also dispute Plaintiff's allegations as to his job duties, whether Defendant Son was Plaintiff's employer, and whether the Defendants are jointly and severally liable to Plaintiff.

B. Fair and reasonable settlement

Pursuant to *Lynn's Food Stores*, the Court must determine whether Lee's compromise and settlement of his claims is fair and reasonable. *Lynn's Food Stores,* 679 F.2d at 1352-1355. In *Silva*, the Eleventh Circuit explained that the FLSA imposes "a duty to review the

compromise" of an FLSA claim. 307 Fed. Appx. at 352. As a framework, the Court may

consider the following factors: "1) the existence of fraud or collusion behind the settlement; 2)

the complexity, expense, and likely duration of the litigation; 3) the stage of the proceedings and

the amount of discovery completed; 4) the probability of plaintiff's success on the merits; 5) the

range of possible recovery; and 6) the opinions of the counsel." *Dees v. Hydradry, Inc.,* 706

F.Supp.2d 1227, 1241 (M.D. Fla. 2010) (finding that the factors for evaluating the fairness of a

settlement in a class action were applicable in an FLSA action); *Mason v. Wyndham Vacation*

*Ownership, Inc.,* 2012 WL 570060 (M.D. Fla. Feb. 17, 2012) (same); *Lewkowicz v. F&J's Caffe*

*Italia, LLC,* 2016 WL 3438750, at *2 (M.D. Fla. June 23, 2016) (same).

Also, the Court may approve the settlement of FLSA claims where there are "problems"

which warrant a compromise and settlement. *Moreno v. Regions Bank,* 729 F. Supp. 2d 1346

(M.D. Fla. 2010) ("Problems, for example, in proving hours-worked or "non-exempt" status - or

the presence of some other lawful defense to payment (if any) - may warrant a reasonable

compromise, if the court approves."); *Meek v. Wachovia Corporation,* 2007 WL 2728404, 2

(M.D. Fla. Sept. 17, 2007) ("The settlement to Plaintiff is a reflection of the difficulties of proof

Plaintiff faced, should he proceed to trial, and makes allowances for the inherent difficulties and

costs of a trial.").

With the foregoing in mind, the Court now reviews Plaintiff's compromise of his claims

and the terms and provisions of the Settlement Agreement.

1. Compromise of the FLSA Claim

The FLSA requires "payment of wages lost and an additional equal amount as liquidated

damages." 29 U.S.C. § 216(b).  In the complaint, Plaintiff claimed unpaid overtime

compensation, or lost wages, in the amount of $90,678.46 together with liquidated damages, for

a total of $181,356.92 (doc. 1-1). Plaintiff sought the same amount in his demand letter to

defendants (doc. 8-1, p. 7).  However, Plaintiff has now compromised his claim and agreed to

accept $7,500.00 for lost wages and $7,500.00 for liquidated damages, or $15,000.00. Plaintiff's

agreement indicates a substantial compromise of his claim to less than 10% of the amount

claimed in the complaint and demand letter.  Also, Plaintiff is called upon to "[a]cknowledge that

the amount designated for backpay [$7,500.00] is greater than 100% of what Lee is entitled to

receive under the Fair Labor Standards Act" (doc. 21-2, p. 2).

> In the Joint Motion, Plaintiff states as follows:

> The plaintiff recognizes that this case was not risk free - - many of the issues in
> this case would have been dependent on the development of specific supporting
> facts, which would have resulted in lesser award of damages to the plaintiff
> because either the Court or the jurors could determine that the plaintiff was an
> exempt employee under the executive exemption and/or the administrative
> exemption.

(Doc. 21, p. 2)

As grounds for his compromise, Plaintiff appears to state that if certain facts regarding

his exempt status were developed and presented to a court or jury, he would receive even less

than the amount he has agreed to accept.  Facing this risk, he compromised his claim.

However, the parties have not provided the Court with a proffer of these facts or any

other information to consider in deciding whether to approve this substantial compromise as fair

and reasonable. Therefore, the Court is unable to ascertain whether Plaintiff's compromise of his

FLSA claim was fair and reasonable.  *See Nichols v. Dollar Tree Stores, Inc.*, 2013 WL

5933991, at *2 (M.D. Ga. Nov. 1, 2013) ("The Parties have not, however, made a 'full and

adequate disclosure of the terms of settlement, including the factors and reasons considered in

reaching same and justifying the compromise of the plaintiff's claims.'") (quoting *Dees*, 706

F.Supp.2d at 1243.); *Rivas v. JL Stone Constr., LLC*, 2015 WL 10527438, at *1 (M.D. Fla. July 13, 2015) (finding that a Settlement Agreement wherein plaintiffs "would receive only twenty-five percent (25%) of their alleged unpaid wages" was a "significant compromise" and ordering additional information); *Norris v. Lake Conway Landscaping of Orlando, Inc*., 2015 WL 3632314, at *2 (M.D. Fla. June 10, 2015) (finding that a "significant compromise" from $47,614.60 claimed to $19,750.00 was fair and reasonable where "the record reveal[ed] sufficient bona fide disputes concerning FLSA provisions (such as the § 213(b)(3) exemption and rate of Plaintiff's pay) to justify Plaintiff's apparent compromise as fair and reasonable" and "the facts that Plaintiff was represented and counseled by experienced attorneys, he obtained discovery from Defendants, resolution of the action after trial is uncertain, and a well-respected mediator assisted the parties in reaching their settlement."); *Bednarz v. Pat the Plumber, Inc.*, 2012 WL 1094229, at *2 (M.D. Fla. Mar. 16, 2012), *report and recommendation adopted,* 2012 WL 1090935 (M.D. Fla. Apr. 2, 2012) (finding plaintiff's decision to accept $1,627.39 for unpaid overtime wages was a "substantial compromise" of his claim for $10,742.60 but reasonable after the plaintiff explained in detail why he agreed to the compromise).

    2. Scope and Terms of the Settlement Agreement

    As part of the assessment of fairness, the Court must consider the specific terms of the parties' Settlement Agreement.

    a. Absence of signature

    As an initial consideration, the Court finds that the Settlement Agreement does not contain the signatures of all parties. Defendant Jin Han Son did not sign the Settlement Agreement. Also, Jong Myung Lee appears to have signed as "President" but the name of the entity for which he or she may be President is not included in the signature lines or the Notary's

Attestation.

     b. Pervasive Release Provision

     Subparagraph 1, which outlines the terms to which the Plaintiff agrees, states that he

"agrees to

> b. Waive and release every known or unknown action, cause of action, suit, or
> claim, asserted or unasserted, that Lee may have against Released Parties, whether
> under Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. § 2000e,
> et. seq.), the Civil Rights Act of 1866, as amended (42 U.S.C. § 1981), the
> Americans with Disabilities Act, as amended (42 U.S.C. §12101, et seq.), the Fair
> Labor Standards Act and Equal Pay Act (29 U.S.C. § 201, et seq.), the
> Rehabilitation Act (29 U.S.C. § 701, et. seq.), the Age Discrimination in
> Employment Act, as amended, (29 U.S.C. § 621, et. seq.), the Family and Medical
> Leave Act (29 U.S.C. § 3801, et. seq.), the Uniformed Services Employment and
> Reemployment Rights Act (38 U.S.C. § 4301, et seq.), the Employee Retirement
> Income Security Act of 1974, as amended, Ala. Code 25-5-11.1 and every federal,
> state, and local statutory or common law theory under which a suit or action can
> be brought[.]

(Doc. 21-1, p. 2, 3).

     Courts are hesitant to approve the release of other specific and general types of claims or

causes of action that are not before the Court in the FLSA action in exchange for the

consideration set forth in a settlement agreement applicable to the plaintiff's FLSA claims. The

district courts have reasoned that the discount or devaluation of the consideration for the FLSA

claim, which occurs as the result of releasing other claims, renders the FLSA settlement unfair

and unreasonable.  As explained in *Moreno v. Regions Bank*:

> ... a non-cash, but still valuable, concession by an employee affects both the
> "fairness" and the "full compensation" component of a settlement. A gratuitous
> concession in exchange for the required payment is "unfair" because (1) the
> FLSA obligates the employer without exception or condition to pay the full
> amount owed and (2) a valuable, non-cash concession extended to the employer
> in exchange for otherwise "full compensation" effectively reduces the employer's
> payment by an amount equal to the value of the concession (and accordingly

reduces the employer's payment to less than "full compensation").

729 F. Supp. 2d at 1348-49 (citing *Dees*, 706 F.Supp.2d at 1227).

> Additionally, this type of release provision shifts the risk to the employee:

> An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled. In effect, the employer requests a pervasive release in order to transfer to the employee the risk of extinguishing an unknown claim. In the language of *Hydradry*, a pervasive release is a "side deal" [ ] in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee. (If an employee signs a pervasive release as part of a "side deal" and later discovers a valuable but released claim, the employee perhaps looks for compensation from the attorney who advise the employee to grant the release.) Although inconsequential in the typical civil case (for which settlement requires no judicial review), an employer is not entitled to use an FLSA claim (a matter arising from the employer's failing to comply with the FLSA) to leverage a release from liability unconnected to the FLSA.

*Id.* at 1351 (citations and footnote omitted).

"Put simply, in order to be compensated consistent with the FLSA, an employee cannot be compelled to surrender other rights, for doing so undermines the fundamental mandatory nature of the minimum wage and overtime protections of the Act by enabling an employer to extract a price for simply doing what the Act requires." *Briggins v. Elwood TRI, Inc.*, 3 F. Supp. 3d 1277, 1289 (N.D. Ala. 2014).

The Court finds that the release provision in the Settlement Agreement is a disfavored broad-sweeping "pervasive" release of claims not brought in this action. Therefore, the Court declines approval of the release provision. *See Webb v. CVS Caremark Corp.,* 2011 WL 6743284, at *3 (M.D. Ga. Dec. 23, 2011) (declining approval of a pervasive release); *Hamilton v. Brinker Int'l Payroll Co., L.P.,* 2011 WL 6032945, at *1 (M.D. Fla. Dec. 5, 2011) (providing that a pervasive release of unknown claims "fails judicial scrutiny."); *Moreno*, 729 F.Supp.2d at

1348–1349 (denying approval of a pervasive release).

    c. <u>Disfavored Confidentiality Provision</u>

The Settlement Agreement contains two disfavored confidentiality provisions, which require confidentiality as to the terms of the settlement for a period of four years (doc. 21-1, p. 2, 3). However, the Settlement Agreement was not filed under seal. Instead it was filed with the Joint Motion for Approval of Settlement (docs. 21, 21-1). Therefore, the Settlement Agreement has been "filed in the public record so the confidentiality provision is effectively a nullity." *Phipps v. W.W. Contractors, Inc.*, 2015 WL 5897705, at *4 (M.D. Fla. Oct. 7, 2015). In addition to effectively being a nullity, the confidentiality provision is unenforceable because it has now been filed in the public domain. *Brown v. SeaDog Brewpub BV, LLC*, 2016 WL 7743030, at *5 (M.D. Fla. Dec. 29, 2016), *report and recommendation adopted,* 2017 WL 119741 (M.D. Fla. Jan. 12, 2017) ("Additionally, such provisions have been rejected because they are inherently unenforceable due to the public filing of the settlement agreements containing the confidentiality clauses.") (citing *Housen v. Econosweep & Maintenance Services, Inc*., 2013 WL 2455958, at *2 (M.D. Fla. Jun. 6, 2013) (same and citing authority).

Even if the Settlement Agreement had been filed in a manner that would protect its potential to remain confidential, the Court would not have granted approval of the confidentiality provision. The law has long been that confidentiality agreements thwart the public-private nature of FLSA settlement agreement. In 2003, the district court in *Stalnaker v. Novar Corp*., explained as follows:

> "In most cases when the parties settle, the court does not examine or approve their agreements; the settlements are purely private contracts. However, when, as here, a settlement [must be] approved by a court, the settlement becomes part of the judicial record. . . .
>
> "There is a common-law presumption that judicial records are public documents. *Nixon v. Warner Communications, Inc*., 435 U.S. 589, 597, 98 S.Ct. 1306, 55

L.Ed.2d 570 (1978); *Chicago Tribune Co. v. Bridgestone/Firestone*, 263 F.3d 1304, 1311 (11th Cir.2001).... [T]he presumption is based on the nature of democracy and the 'citizen's desire to keep a watchful eye on the workings of public agencies.' *Nixon*, 435 U.S. at 598, 98 S.Ct. 1306. A judge is 'the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal' any part of the record. For this reason, a judge 'may not rubber stamp a stipulation to seal the record.' *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.,* 178 F.3d 943, 945 (7th Cir.1999).

 "The strength of the presumption of openness falls along a continuum, with the presumption being stronger for documents that 'directly affect an adjudication' than for documents, such as certain discovery materials, that 'come within a court's purview solely to insure their irrelevance.' *United States v. Amodeo*, 71 F.3d 1044, 1049 (2nd Cir.1995); *see also Chicago Tribune*, 263 F.3d at 1311.

"And the presumption is surely most strong when the 'right' at issue is of a 'private-public character,' as the Supreme Court has described employee rights under the FLSA. *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 708, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). This public character is based on 'an intent on the part of Congress to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce. The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce. To accomplish this purpose standards of minimum wages and maximum hours were provided.' *Id.* at 706–707, 65 S.Ct. 895 (footnotes omitted). Absent some compelling reason, the sealing from public scrutiny of FLSA agreements between employees and employers would thwart the public's independent interest in assuring that employees' wages are fair and thus do not endanger 'the national health and well-being.' *Id.*"

 293 F.Supp.2d 1260, 1263–1264 (M.D. Ala. 2003) (some internal citations omitted).

The district courts have not waivered from this reasoning.  More recently, in 2014, the

district court in *Briggins*, explained as follows:

Judge Thompson explained that confidentiality requirements in FLSA settlements hinder not only the public interest behind the Act, but also the rights of the employee himself. Confidentiality agreements hinder the public policy of universal enforcement of the FLSA, by hiding from the public the nature of the dispute and its resolution. "Absent some compelling reason, the sealing from public scrutiny of FLSA agreements between employees and employers would thwart the public's independent interest in assuring that employees' wages are fair

11

and thus do not endanger 'the national health and well-being.' "

3 F. Supp. 3d at 1289–1290 (quoting *Hogan v. Allstate Beverage Co., Inc.,* 821 F.Supp.2d 1274, 1283 (M.D. Ala. 2011) and quoting *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 708, 65 S.Ct. 895 (1945)). The district court further explained that "such confidentiality provisions impact the FLSA rights of the employee for they prevent the employee from alerting other workers to potential FLSA violations on pain of personal liability and by enabling the employer to retaliate against an employee for exercising FLSA rights by advising other employees of FLSA violations." *Briggins,* 3 F. Supp. 3d at 1289–1290 (citing *Hogan,* 821 F.Supp.2d at 1284, citing and quoting *Dees,* 706 F.Supp.2d at 1242 (internal quotations omitted) and collecting cases as follows: *"DeGraff v. SMA Behavioral Health Services, Inc.,* 945 F.Supp.2d 1324, 1330 (M.D.Fla.2013) (FLSA settlement rejected in part due to confidentiality agreement); *Poulin v. General Dynamics Shared Res., Inc.,* 2010 WL 1813497 (W.D. Va. May 5, 2010); *Webb v. CVS Caremark Corp.,* 2011 WL 6743284, *3 (M.D. Ga. Dec. 23, 2011) ("[I]t is likely the confidentiality provisions are unenforceable."); *Glass v. Krishna Krupa, LLC,* 2010 WL 4064017, *1 (S. D. Ala. Oct. 15, 2010) ("This court finds that the parties settlement agreement is due to be rejected as unreasonable because it contains a confidentiality provision."); *Parker v. Encore Rehab., Inc.,* 2012 WL 6680311, *5 (S.D. Ala. Dec. 21, 2012) ("[T]he confidentiality clause will not be approved."); *Robertson v. Ther–Rx Corp.,* 2011 WL 1810193, *1 (M.D. Ala. May 12, 2011) ("[T]he settlement's confidentiality provision will be stricken."); *Scott v. Memory *1290 Co., LLC,* 2010 WL 4683621, *2 (M.D. Ala. Nov. 10, 2010) ("A confidentiality provision in an FLSA settlement agreement both contravenes the legislative purpose of the FLSA and undermines the Department of Labor's regulatory effort to notify employees of their FLSA rights."); *Bright v. Mental Health Resource Ctr., Inc.,* 2012 WL 868804 (M.D. Fla. Mar. 14,

2012); *Nava v. Ornelas Mexican Restaurant, Inc.,* 2013 WL 2248052, *4 n. 4 (N.D. Ala. May 22, 2013) ("The Court was not willing to approve the original agreements ... because they contained ... confidentiality provisions.").").

The district courts continue to disapprove the disfavored confidentiality provisions. *Brown*, 2016 WL 7743030, at *5 ("Courts within this circuit routinely reject such confidentiality clauses contained in FLSA settlement agreements because they 'thwart Congress's intent to ensure widespread compliance with the FLSA.'") (quoting *Pariente v. CLC Resorts and Devs., Inc.,* 2014 WL 6389756, at *5 (M.D. Fla. Oct. 24, 2014)).

That being said, confidentiality provisions have been approved in FLSA settlements where the provision is bargained for and the plaintiff receives separate consideration. *See Smith v. Aramark Corp.*, 2014 WL 5690488, at *3–4 (M.D. Fla. Nov. 4, 2014); *Caamal v. Shelter Mortgage Co.*, 2013 WL 5421955, at *4 (M.D. Fla. Sept. 26, 2013) (same). Confidentiality provisions have been approved where the plaintiffs requested the inclusion and set forth sufficient legal reasons for confidentiality. *Crabtree v. Volkert, Inc.*, 2013 WL 593500, at *5 (S.D. Ala. Feb. 14, 2013). Confidentiality provisions have been approved where a claim other than an FLSA claim was included in the settlement agreement. *Hardy v. Mid-S. Bells, LLC,* 2016 WL 6395361, at *3 (N.D. Ala. Oct. 28, 2016). But there is no evidence in this action that any set of circumstances existed by which the Court could have approved a confidentiality provision, had the Settlement Agreement been properly filed.

d. The "No Reemployment" provision

The Settlement Agreement contains a provision whereby Plaintiff agrees to

Waive all rights to reinstatement and never reapply for employment with Released Parties or its currently existing affiliates or subsidiaries; in the event that Lee applies for re-employment or employment with Released Parties, Lee agrees that the Released Parties shall incur no liability for any denial of Lee's

employment application and Lee releases and discharges and agrees to hold
Released Parties harmless for any claims arising out of a denial of re-employment
or employment by Lee at any time following the date of this Agreement,
including, without limitation, any claim of retaliation[.]

(Doc. 21-1, p. 2).

However, "if an agreement to settle a FLSA overtime claim includes a no-reemployment

provision, many judges will strike the provision because its impact could be substantial and

result in an unconscionable punishment for asserting FLSA rights. *Sides v. Advanced Disposal*

*Servs. Nat'l Accounts, Inc.*, 2016 WL 1317667, at *3 (M.D. Fla. Mar. 15, 2016), *report and*

*recommendation adopted,* 2016 WL 1305287 (M.D. Fla. Apr. 4, 2016) (citing *Nichols,* 2013 WL

593391, at *5-6).  The Court finds the Middle District of Georgia's evaluation of a waiver of

future employment instructive:

> [T]he instant future-employment waiver, without more, can also be viewed as
> punishment for the exercise of a legal right under the FLSA, which would be
> inconsistent with the purpose of the statute. No matter how "voluntary"
> Plaintiff's submission to this provision may be, the Court believes that the
> inclusion of overly broad provisions like this in FLSA settlement agreements
> have implications that reach far beyond the parties involved. Because this
> agreement will become part of the public record, other employees seeking to
> vindicate rights under FLSA may feel deterred from doing so for fear that
> employers might seek to exact from them a promise to never again apply for
> future employment….[The Defendant] is welcome to hire whom it chooses, as
> employers are permitted to do within the bounds of the law. In this Court's view,
> however, expansive provisions like the instant future employment waiver are
> unconscionable when placed in a FLSA agreement—a characterization that is not
> negated by the agreement of the parties.

*Nichols*, 2013 WL 5933991, at *5-6.

Nothing in the record indicates that Plaintiff does not want to be employed by

Guyoungtech in the future. Therefore, the Court declines to approve the waiver of re-

employment.

14

Additionally, Plaintiff is waiving his right to employment not only with Defendant Guyoungtech, but also with any "currently existing affiliates or subsidiaries" (doc. 21-1). The Court is without any information as to how many affiliates or subsidiaries exist, and therefore, cannot determine the scope of Plaintiff's release and the impact of the waiver on future employment. Guyoungtech may have only one existing affiliate or subsidiary, or none, but on the other hand, Plaintiff could be waiving future employment with a substantial number of potential employers. *See Nichols,* 2013 WL 5933991, at *6 ("In this Court's view, however, a future-employment waiver for a local realty company does not engender anywhere near the same kind of concerns that a waiver for a retail business of the stature of Dollar Tree does. Dollar Tree is a Fortune 500 company that operates 4,763 stores throughout the United States and Canada, making it the nation's largest single price point retailer. There appear to be over 70 Dollar Tree locations in Georgia alone. Based on these numbers, the impact of the instant future-employment waiver on Plaintiff would be far from 'inconsequential.'"). This too is a basis for the Court to decline to approve the provision in the Settlement Agreement.

e. Attorney's fees

In the joint motion, the parties generally assert that the Settlement Agreement is fair and reasonable but do not specifically address whether the attorney's fee is reasonable. The Settlement Agreement indicates that the parties agreed to an attorney's fee of $10,000.00 to be paid to Plaintiff's counsel.

The FLSA requires that the "court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). In this circuit, the "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is

compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva*, 307 Fed. Appx. at 352. Generally, as part of the review, the Court may consider whether the attorney's fees were negotiated separately and apart from the Plaintiff's settlement of the FLSA claims. *See Wing v. Plann B Corp.*, 2012 WL 4746258, *4 (M.D. Fla. Sept. 17, 2012) (where there is a reasonable basis for compromise and "Plaintiff's claims were resolved separately and apart from the issue of attorneys' fees, . . . there is no reason to believe that Plaintiff's recovery was adversely affected by the amount of fees and costs to be paid to Plaintiff's counsel"). However, the parties have not provided any information as to the negotiation for the attorney's fees. Instead, the Settlement Agreement indicates that the parties settled Plaintiff's claim for the "gross amount of $25,000.00" which was then "apportioned" between Plaintiff and his counsel, with counsel receiving $10,000.00, or 40% of the gross amount.

Additionally, this Court generally conducts a lodestar analysis as part of its review of the reasonableness of an attorney's fee award. *Norman v. Alorica*, 2012 WL 5452196, at *2 (S.D.Ala. Nov. 7, 2012); *Brown*, 2016 WL 7743030, at *2 ("As the Court interprets *Lynn's Food* and *Silva*, where there is a compromise of the amount due to the plaintiff, the Court should decide the reasonableness of the attorney's fees provision under the parties' settlement agreement using the lodestar method as a guide. In such a case, any compensation for attorney's fees beyond that justified by the lodestar method is unreasonable unless exceptional circumstances would justify such an award.") "To calculate reasonable attorneys' fees, courts are to consider the number of hours reasonably expended on the litigation, together with the customary hourly rate for similar legal services. These amounts are multiplied together to determine the so-called 'lodestar.'" *Padurjan v. Aventura Limousine & Transp. Serv., Inc.*, 441 Fed Appx. 684, 686

(11th Cir. 2011) (internal citations omitted).  However, Plaintiff has not provided the Court with any documentation as to the number of hours expended, the work performed, or the customary hourly rates, such that the Court may conduct the lodestar analysis.

III. Conclusion

For the reasons set forth herein, the parties' Joint Motion for Approval of Settlement Agreement and Dismissal with Prejudice is DENIED with leave to re-file on or before April 17, 2017.

DONE and ORDERED this the 23rd day of March 2017.


**/s/ Kristi K. DuBose**
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**